UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, | No. 2:15-CR-170 KJM |
| Plaintiff, | ORDER |
| v. | |
| Todd Jackson Smith, | |
| Defendant. | |

Defendant Todd Jackson Smith renews his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), citing his vulnerability to COVID-19 due to his skin cancer diagnosis and incidents of COVID-19 positive cases at FCI Sheridan, where he is housed. Mot., ECF No. 68; Reply, ECF No.72. The government contests Mr. Smith's increased risk of developing severe COVID-19 complications from his particular type of cancer, basal cell carcinoma. *See generally* ECF Nos. 65 & 70. As explained in more detail below, the motion is **granted**.

**I.   BACKGROUND**

The court previously set forth the factual and procedural history of this matter in its January 6, 2021 order denying the prior motion without prejudice; the court incorporates that history by reference here. Jan. 6 Order at 1–3, ECF No. 67. On January 13, 2021, Mr. Smith filed this renewed motion for compassionate release and addressed this court's earlier concerns

/////

1

regarding inconclusive medical records and an acceptable release plan. *See* Jan. 6 Order at 5; *see also* Mot. at 3–5.

The government has provided copies of updated medical records, which note a prior history of basal cell carcinoma on the shoulder blade area and reflect a December 2020 pathology report identifying a new incidence of basal cell carcinoma on the skin of his right lower leg. *See* Status Report & Renewed Opp'n Ex. 1 (BOP Medical Records), ECF No. 75-1.[1] Mr. Smith also submitted an amended release plan requesting to reside with his mother, Dr. Marilyn Smith. Mot. at 6.

## II.   LEGAL STANDARD

A sentencing court has authority to modify a term of imprisonment under 18 U.S.C. § 3582(c)(1)(A). Under that statute, as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), the court may grant a defendant's motion to reduce his term of imprisonment, provided the defendant has first satisfied an exhaustion requirement, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," if "extraordinary and compelling reasons warrant such a reduction," and if "a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A), 3582(c)(1)(A)(i).

Many years ago, before the First Step Act and before defendants could move to reduce their sentences under § 3582, the Sentencing Commission issued a policy statement addressing what qualifies as "extraordinary and compelling reasons" under § 3582. *See* U.S.S.G. § 1B1.13. The same Guidelines section also "imposes an additional consideration of whether the defendant is a danger to the safety of any other person or to the community." *United States v. Numann*, No. 16- 00025, 2020 WL 1977117, at *2 (D. Alaska Apr. 24, 2020) (citing U.S.S.G. § 1B1.13(2)).

---

[1] The court previously granted the government's request to file exhibits to the government's opposition under seal to protect defendant's private medical information, and has now granted all of the requests to seal associated with this motion. *See Chester v. King*, No. 1:16-cv-01257, 2019 U.S. Dist. LEXIS 154413, at *5 (E.D. Cal. Sep. 10, 2019) ("This court, and others within the Ninth Circuit, have recognized that the need to protect medical privacy qualifies as a 'compelling reason' for sealing records.").

Since the First Step Act was passed, district courts have disagreed about whether the Sentencing Commission's statement is binding, as this court has summarized in previous orders. *See, e.g.*, *United States v. Terraciano*, No. 17-00187, 2020 WL 5878284, at *2–3 (E.D. Cal. Oct. 2, 2020). This court has looked to the Sentencing Commission's policy statement as guidance in several previous orders and will do the same here. *See, e.g.*, *id.*; *United States v. Schweder*, No. 11-00449, 2020 WL 5257598, at *3–4 (E.D. Cal. Sept. 3, 2020).

**III.   ANALYSIS**

The government does not dispute that Mr. Smith has satisfied the exhaustion requirement of § 3582(c) or that he has received a diagnosis of basal cell carcinoma. *See* Opp'n at 1, ECF No. 70. It does not argue granting Mr. Smith's motion would put his community at risk. *See generally id.* The government also does not dispute there are active cases of COVID-19 at FCI Sheridan, but it argues the numbers are trending down. *Id.* at 1. On January 19, 2021, the Bureau of Prisons' (BOP) "COVID-19 Cases" report showed 14 confirmed cases among inmates and 13 among staff. *Id.* More recently, FCI Sheridan has reported 1 inmate and 5 staff tested positive, 58 inmates and 12 staff are designated as recovered at that institution. *See* BOP, *COVID-19 Cases* (updated daily)).[2] Given the issues raised by the parties' briefing, the court considers whether Mr. Smith has demonstrated his renewed motion is supported by extraordinary and compelling reasons and evaluates his amended release plan for adequacy.

Mr. Smith contends his new skin cancer diagnosis against the backdrop of his prior history renders him more vulnerable to serious side effects if he contracts COVID-19. Mot. at 2. He notes that he first observed a lesion on his left scapula on or about the time he had a clinical encounter to discuss it on March 5, 2020. Reply at 2 (referencing BOP's Medical Notes at 1, ECF No. 73-2 (sealed)). The lesion on the scapula was biopsied along with another lesion found at some point on Mr. Smith's leg; the biopsy sample from the leg was confirmed as cancerous in mid-December 2020. *See* BOP's Medical Records at 8, ECF No. 75-1. Following the biopsy, BOP physician Dr. Andrew Grasley memorialized a clinical encounter with Mr. Smith on January 5, 2021, confirming with him BOP Health Services' determination that a "lower leg biopsy was a

---

[2] https://www.bop.gov/coronavirus/ (last accessed March 9, 2021).

basal cell carcinoma," with the cancer approaching the biopsy specimen's "borders." *Id*. In his notes, Dr. Grasley recorded the "disposition" as "Follow-up at Sick Call as Needed." *Id*. Under "other" he wrote that "Patient is releasing in two months and will [follow up] with his dermatologist when he gets out. *Id*. It is not clear why Dr. Grasley thought Mr. Smith was due to be release in two months, by on or about March 9, 2021. BOP records show Mr. Smith's release date as May 19, 2021. *See* Inmate Public Data at 4, ECF No. 57-1.

While the government acknowledges the Centers for Disease Control and Prevention (CDC) recognizes cancer generally as a factor that increases the risk of severe illness from COVID-19, *see* Opp'n at 1,[3] it argues other district courts have declined to find a diagnosis of skin cancer, including basal cell carcinoma, to be an extraordinary circumstance warranting compassionate release. *See* Opp'n at 2. The cases the government cites are distinguishable. In *United States v. Burkholder*, No. 2:12-CR-00240 GMN CWH, 2020 WL 3643434, at *3 (D. Nev. July 3, 2020), the court found defendant's basal cell carcinoma diagnosis concerning but insufficient to constitute extraordinary and compelling reasons for compassionate release. In denying defendant's motion, the court in *Burkholder* relied on information showing the defendant's facility had not at the time experienced an outbreak of COVID-19 infections, noting "records show no inmates or staff as positive[.]" 2020 WL 3643434, at *3. Here, FCI Sheridan has experienced COVID-19 outbreaks, as noted. Moreover, this court previously has observed conditions of confinement there increase the risk of infection. *See* Jan. 6 Order at 5 (crowded conditions at FCI Sheridan increased risk of COVID-19 infection). The court sees no reason to revisit its prior conclusion on the record here.

In *United States v. Avenarius*, No. 15-CR-1010-CJW-MAR, 2020 WL 7345654, at *4 (N.D. Iowa Dec. 14, 2020), the court would have found the defendant's diagnosis of basal cell carcinoma presented an extraordinary and compelling reason for release, except that defendant had contracted and recovered from COVID-19 without severe symptoms. It interpreted the CDC as saying "[c]ases of reinfection with COVID-19 have been reported, but remain rare." *Id*. (citing

---

[3] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Feb. 11, 2021).

1  *Reinfection with COVID-19*, CDC (Oct. 27, 2020)).[4]  Here, Mr. Smith has not previously
2  contracted COVID-19.  Even if he had, this court notes the same CDC webpage on which the
3  court in *Avenarius* relied supports the conclusion that "some reinfections are expected." *See*
4  *Reinfection with COVID-19*, CDC (March 15, 2021).[5]

5        In *United States v. Taffe,* No. 16-CR- 60300-RAR, 2020 WL 6700445, at *3 (S.D. Fla.
6  Nov. 9, 2020), addressing a different form of skin cancer, the court concluded defendant had
7  "failed to show that his cardiovascular issues and squamous cell carcinoma rise to the level of
8  severity that would warrant compassionate release."  The court observed defendant's concerns, as
9  presented in the motion, were "too speculative" to support a finding that his circumstances were
10 extraordinary and compelling.  *Id.*  In this case, Mr. Smith's position is not based solely on
11 speculation.  As explained below, his medical provider has specifically recommended that Smith
12 have a follow-up consult with a dermatologist within a relatively tight time frame following a
13 positive biopsy.

14       On the one hand, the records demonstrate the government has been providing Mr. Smith
15 with some medical care for his medical condition of basal cell carcinoma.  He received a biopsy
16 following his report of the new lesion on his scapula, although the biopsy report issued
17 approximately nine months after he reported that new lesion; by the time of the report a biopsy
18 was performed on a lesion on his leg.  *See* BOP's Medical Notes at 1 (sealed); BOP's Medical
19 Chart at 1 (sealed).  The biopsy report confirmed the presence of cancer on the leg.  BOP Medical
20 Records at 8, ECF No. 75-1.  Specifically, the report observes "[m]icroscopic examination reveals
21 islands of atypical basaloid cells" in the biopsy specimen, and notes the lesion "approaches one of
22 the lateral excision margins."  *Id.*  For these reasons, the report recommends follow up of the
23 patient.  *Id.*  Mr. Smith in fact had a clinical visit with Dr. Grasley within a month of the biopsy
24 report's issuing.  Dr. Grasley assumed Mr. Smith would be released within two months of that
25 /////

---

    [4] https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last accessed March 15, 2021).
    [5] *Id*.

visit; he did not expressly specify that Mr. Smith must be seen by a dermatologist by a date certain to be able to attend to his medical needs properly.  *See* BOP Medical Chart at 1.

        The parties argue differing inferences arise from the chronology documented by the medical records.  The government argues a three-month delay in treatment of Mr. Smith's basal cell carcinoma, with the clock apparently starting at the time the biopsy sample was excised, does not run afoul of best medical practices, as supported by at least one medical journal.  Opp'n at 3 (citing *Management of primary skin cancer during a pandemic: Multidisciplinary recommendations*, National Institutes of Health ("*Multidisciplinary recommendations*")).[6]  Mr. Smith counters, without citing any other literature, the three-month time frame should be measured from March 2020, when he first complained of a lesion and not from December 15, 2020, when two lesions were biopsied and one diagnosed as cancerous.  *See* Reply at 2.  The resource cited by the government summarizes the recommendations of three associations of medical doctors for patients with a variety of skin cancers, including basal cell carcinoma.  With respect to basal cell carcinoma (BCC), the document provides, in pertinent part:

> BCCs are at low risk of significant progression and mortality as a result of a treatment delay due to the slow natural history of this malignancy. Although to our knowledge no studies to date have investigated the effect of treatment delay on disease-specific mortality for BCC, a retrospective study found that a mean treatment delay of 70 days (range, 21-155 days) was associated with a median diameter increase of 0.5 mm and a median area increase of 4.71 mm. Delaying treatment for >1 year was associated with a doubling of the Mohs[7] defect size.

*Multidisciplinary Recommendations* (footnotes omitted).  In "Summary recommendations" for basal cell carcinoma, the report explains the three medical associations

---

[6] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7301000/ (last accessed March 15, 2021).

[7] The article references Mohs micrographic surgery, a technique used to remove skin tumors based on a complete evaluation of skin cells and the tumor's margins.  The tumor's precise location on the surgical map results in a complete removal of the tumor with maximum normal tissue preservation.  *See Mohs surgery*, Mayo Clinic, https://www.mayoclinic.org/tests-procedures/mohs-surgery/about/pac-20385222 (last accessed March 16, 2021).

6

>have made recommendations for the treatment of patients with BCC. The NCCN [National Comprehensive Cancer Network] recommends delaying treatment during the COVID-19 pandemic. The ACMS [American College of Mohs Surgery] recommends a treatment delay of 3 months unless the patient is highly symptomatic.  The BAD [British Association of Dermatologists] and BSDS [British Society for Dermatological Surgery] recommend that treatment be deferred for 3 to 6 months unless the patient is highly symptomatic.
>
>Treatment of BCC tumors can be deferred for at least 3 months unless the patient is highly symptomatic. . . .

*Id.* (footnotes omitted); *see also id.* Table 2 (summarizing basal cell carcinoma recommendation as "Can delay treatment for 3 months unless patients are highly symptomatic").  In other words, the medical professionals appear to be saying, some delay in treatment is acceptable unless someone is "highly symptomatic"; three months is within the acceptable range, with British doctors' societies signaling up to six months may be tolerable.  What qualifies as "treatment" is not entirely clear.  Some of the language in the report cited by the government suggests it is treatment designed to prevent increase in the diameter or area of a cancerous spot.  *See Multidisciplinary Recommendations*.  Assuming this is a fair reading, the court gathers delay is measured from the time a lesion is first identified before growing past a certain size.  If a biopsy is a method of determining whether cancer is present, it would not appear to qualify as treatment, even if the biopsy removes some or all of the cancerous cells identified through an initial visual inspection.

Here, Mr. Smith's release date is well beyond three or six months from the clinical encounter documented in the medical records that first prompted his biopsy.  While the clinical encounter notes do not memorialize a concern about a lesion on Mr. Smith's leg, by nine months after the encounter, a lesion on his leg was biopsied; it must have appeared at some point before the biopsy specimen was removed.  Mr. Smith is thus more than a year beyond the time he observed a suspicious lesion on his scapula, and likely more than three months beyond the time the suspicious leg lesion was confirmed as cancerous.  This chronology, however incomplete, combined with Dr. Grasley's assumption that Mr. Smith would receive follow up treatment by

mid-February 2021, leads the court to conclude that Mr. Smith's medical condition provides "extraordinary and compelling reasons" to grant his request for compassionate release, to facilitate him seeing a medical doctor for followup now as soon as possible. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

The applicable sentencing factors also weigh in Mr. Smith's favor. Although his conviction for a single count of conspiracy to commit bank fraud represents a serious offense, he does not have other criminal history and he has no record of discipline since entering prison, *see* Mot. at 4. He has served most of his sentence. The government has not argued that the sentencing factors of § 3553(a) do not support Mr. Smith's motion. *See generally* Opp'n. Mr. Smith has also submitted an amended release plan and proposes residing with his mother, Dr. Marilyn Smith. Mot. at 6. Dr. Smith offers her son "an open invitation to reside with her and her home in La Mesa (San Diego area), as well as employment and supplemental financial support." *Id.* The court has conferred with the Probation Office regarding this plan, and that office has approved Mr. Smith's proposed release plan to reside with his mother.

## IV.   CONCLUSION

For the foregoing reasons, defendant's motion for compassionate release is **granted.** The court modifies defendant's previously imposed sentence of incarceration of 26 months to time served.

The court ORDERS Mr. Smith to self-isolate for fourteen days in the residence of Dr. Smith upon arrival, as a means of protecting his health and that of the others residing in the home. He must also comply with all applicable public health orders. The defendant shall be released as soon as appropriate travel arrangements are made and it is safe for the defendant to travel. There shall be no delay in ensuring travel arrangements are made.

This order resolves ECF No. 68.

IT IS SO ORDERED.

DATED: March 18, 2021.

CHIEF UNITED STATES DISTRICT JUDGE